Good morning, Your Honors, and may it please the Court. My name is Martine D'Agostino, appearing for defendants. I'd like to reserve five minutes for rebuttal. In 2015, Plaintiff Shiloh Quine settled her claims against CDCR, including her equal protection claims. As a result of the party's agreement, Plaintiff was the first state prison inmate ever to receive sex reassignment surgery. Plaintiff was placed in a women's facility. CDCR created a policy by which inmates may apply for and receive sex reassignment surgery, and CDCR also created a policy by which transgender inmates may receive property consistent with their gender identities. As a result of this integrated settlement agreement, real changes were made that made prison more fair for transgender inmates. Moreover, defendants have fully performed the terms of the agreement, and this case should be over. Therefore, the district court's ruling should be reversed for the following reasons. The district court erred by admitting extrinsic evidence to contradict the agreement, and should the court reach the issue, the transgender property policy is constitutional under existing precedent because it is rationally related to prison safety and security. Is this a breach of contract case? And if so, how does the equal protection claim come into it? Because as you mentioned, the equal protection claims were settled, and it seemed that the court only had the breach of contract claims before it. How do equal protection claims apply? Yes, Your Honor. In defendants' view, this is a breach of contract case, and the matter can be decided without ever reaching the constitutional issue that the district court decided. Can you explain why, what the basis for that is for the equal protection claim? Because the district court just immediately went to the equal protection arguments, and I was having trouble understanding what the basis for that was. As I understand it, in the district court's view, the by review of the extrinsic evidence, which apparently provided more than just the opportunity to provide comment on the transgender property policy, that somehow revived her equal protection claim. Okay. But this view is patently wrong, because as you said, she did release her 14th Amendment equal protection claim with respect to the transgender property policy. And moreover, it's undisputed that she had multiple opportunities to provide comment on the draft policy before it became final. She got a copy of the policy before it was submitted to the Office of Administrative Law. She met with decision-makers at CDCR who were responsible for drafting the policy many times and in person. And the policy was revised in response to her comments. So this term of the settlement agreement has been fully executed. Well, the settlement agreement also allowed for the district court to retain jurisdiction. The settlement agreement — Correct? Yes, that's correct. Although, it is important to note that this was a private settlement agreement. It was not a consent decree, and it was not subject to approval by the district court. The district court still retained jurisdiction under this agreement. Yes, that's correct. And the district court has authority to enforce a settlement agreement to the extent that the parties give it to the district court. Well, so what was — well, it contemplates, it says, that the court shall retain jurisdiction of this litigation while this agreement's terms are being executed. Any disputes? That's correct, Your Honor. Any disputes? That's correct. However, the — So why doesn't that encompass the dispute that she tried to bring to the — to the district court judge? Well, as I stated, settlement agreements — the district court has no inherent power to enforce a settlement agreement. So the disputes the district court has power to adjudicate must be contained within the terms of the settlement agreement. And the — and the terms of the settlement agreement provided that she would receive sex reassignment surgery, that she be placed in a female facility, that CDCR would create a policy by which inmates could apply for and receive gender reassignment surgery, and that CDCR would create a transgender property policy. All of those terms had been executed. The purpose of the dispute — And she disputes the way several of those policies were implemented. Implementation was not a term — Or created under the language that was used in the policy statements. There's no dispute that CDCR created a transgender property policy. The dispute lies — And she disputes the content of that policy in certain respects. Right. And this goes to the heart of the parties' disagreement, which is what the term — the opportunity to provide — Why doesn't the district court have jurisdiction to entertain that dispute? The district court has jurisdiction to the extent that the parties delineate it within the contract. We're just going round and round now. Sure, Your Honor. This question hinges on how we interpret the phrase, the opportunity to provide comment. As I stated, defendants gave plaintiffs multiple opportunities to provide comment on — Well, when the question was raised, I think it was before the magistrate judge or they were on the — I guess it was the phone call. There was a conversation about this particular aspect of paragraph G. Yes. Right? Yes. The matter was raised at a settlement conference, and a provisional — And the lawyer for the state clearly said, well, they can bring that to the court. A provisional agreement was placed on the record subject to CDCR approval and the governor's office approval. The transcript of the settlement conference reflects the party's intention to agree, but also reflects the fact that they had a provisional agreement subject to further negotiation. A written agreement was executed seven days later, and it's clear that plaintiff's veto power doesn't appear in the written agreement. She's a sophisticated party. Well, it's not a — I'm not — it's not — it shouldn't be read as a veto power, but if she had a dispute, it seems that this agreement allowed her to bring that dispute to the court's attention. She — she — And ask the court to resolve it. Defendants don't disagree that she has the right to bring disputes to the court's attention to the extent that defendants failed to execute the settlement agreement. But defendants did not fail to execute the settlement agreement. They created a transgender property policy, and they provided her the opportunity to comment on it. But any disputes between the parties concerning this agreement shall first be presented to the magistrate judge. The agreement can't be read so broadly as to provide any dispute — provide that any dispute Ms. Quine has in perpetuity with the settlement agreement under any constitutional law, the 14th Amendment, for example, she could forever — I'm not — Judge Acuda made a good point, that what we have here is a breach of contract. Right, Your Honor. So therefore, the terms of the contract should dictate the district court's ability to adjudicate disputes. The regulations that are being challenged are final, however, right? They have been finalized with the Office of Administrative Law. That's correct, Your Honor. Tell me, in the agreement it says before those policies, and that's the TIA, PPS, are final. Before that, a plaintiff shall have the opportunity to comment. Does that mean after they're final, she no longer has the opportunity to comment? That's how we read that term, Your Honor. Yeah, well, she has received multiple opportunities to comment before the — You made that argument. I didn't see any focus on that part of the argument, that there's a difference between the proposed policies and the final policies under the terms of the agreement. You're correct. That argument did not appear in the party's briefs, but I do think it's a reasonable interpretation of that term. She was given an opportunity to comment before the policies became final, multiple opportunities. There's no dispute. All right, but that doesn't make sense, does it, when you look at the exchange between the lawyers that Judge Paz has referenced? Well — That doesn't make any sense. If you're referring to the exchange between the lawyers at the settlement conference, I agree that it doesn't shed light on what the opportunity to comment should mean, because the term opportunity to comment was never used at the settlement conference. The parties discussed that the State attorney stated that CDCR would review and revise its policies to allow transgender inmates property items regardless of gender identity. And then plaintiff's counsel said that their — his understanding was that a process would be in place for the parties to resolve disputes with regard to items. And defense counsel said, yes, there will be continuing jurisdiction by the district court. But the term opportunity to comment was never used. So we have to — we have to conclude, because it doesn't appear in the final agreement, that this term was subject to subsequent negotiations and that this right to have the district court adjudicate her 14th Amendment claim was relinquished by the release of the settlement agreement. If we accept your argument, then the whole case vanishes, right? The case is over, because there's nobody who has standing before the court to challenge anything under the agreement. Isn't that correct? Well, with respect to plaintiff's disputes about specific property items, that's correct. But there are other breaches that they're alleging. Yes, that's also correct. And I have a question about one of the other breaches they're alleging about, that the property items are provided only to the inmates who are in the hub institutions. And the language is not entirely clear about that. And it also wasn't clear to me whether all of the inmates who have — who are identified under the policy are immediately transferred to hub institutions. Can you explain why there's no breach of the contract on that? Sure. As to the first point, the question about transgender hub institutions, it's — I see that I'm running out of time. I'll answer your question. The question about transgender hub institutions, it's clear that the import of that sentence was to create a policy for transgender inmates, not to devise a methodology by which they'll be housed or by which they'll be identified. And it's also clear that the settlement agreement doesn't prohibit CDCR from creating a method by which transgender inmates will be transferred to a prison where they will receive more services. This is a very small population, and inmates are clustered according to their needs throughout the prison system. And transgender inmates are no different. And it's clear that there is no prohibition in the settlement agreement to that practice. Second, with respect to identification, your question about identification, Your Honor, again, the purpose of the settlement agreement was not necessarily to create a methodology by which transgender inmates would be identified, but it does contemplate some sort of identification. It does not contemplate self-identification. The district court did not abuse its discretion in requiring that only medical or mental health personnel should be able to identify transgender inmates because any other result would be absurd. The status as transgender is confidential information in the prison context, and custody staff, janitorial staff, are not qualified to make that determination. This property is considered therapeutic for gender treatment for gender dysphoria, and the policy contemplates that inmates will be identified and provided the property in a limited fashion by people with the requisite experience and training. Going back to the hub institution for just one minute, my question was, what if there are many transgender inmates in, say, male institutions that haven't been, that are not hub institutions, and then the concern that appellees bring is that they will not have access to gender-appropriate property? I'm sorry. I failed to answer that question. Yes, the policy provides that inmates will be identified on a case-by-case basis. So all inmates who have been identified as transgender under the policy should be transferred to a hub. An inmate has no right to avoid transfer. That's just a general rule in the prison system. However, in the supplemental excerpts of Record 17, the policy provides that inmates who cannot be transferred because of other factors, other case factors, will be evaluated on a case-by-case basis and provided property as needed. What does that mean? I mean, for what reasons would they not be transferred to a hub if they otherwise qualify? That is meaningless to me. Oh, so there are other reasons. For example, an inmate may have enemy concerns, enemies that all the other hub institutions and be unable to be transferred for safety reasons. An inmate may be disabled under the ADA and need to remain at a facility that can, where the disability need may be met. There are several other reasons. Are these other reasons a part of the record in this case? No, Your Honor, they're not. Those other reasons are not. Why don't you address the last issue that the district court dealt with, which was he ordered CDC to provide stops and binders. Sure. Transgender males in. Sorry, Your Honor. Women's prisons. The settlement agreement requires a policy that provides access to property consistent with gender identity, but access does not necessarily mean entitlement. The district court abused its discretion by requiring CDCR to provide compression tops at State expense. No term of the agreement requires CDCR to do so. And I will note that almost all of the disputed property items are personal property items. They are not issued by the State. They are property items that inmates may purchase from catalogs, and CDCR does not have the discretion to modify them and does not provide them as a rule. So these would be the only items among the disputed items that would be provided at State expense. I thought I had read someplace, and I can't remember where, if it was in a colloquy or if it was in one of the briefs or something. But the Bureau of Prisons provides the clothing that they do provide. It's manufactured by an inmate system? Some sort of clothing manufacturing process? Yes. I mean, I'm not sure what it is. And one of the concerns was that there are so few transgender males that it would be inefficient for them to produce the tops, and that's why they weren't going to do it. That is one justification. That's what I read. Yes. You're correct, Your Honor. That is one. So I got the impression that if they could do it, they would. I wouldn't go that far, Your Honor. I don't think that's what I'm going to do. That's what it seems to have suggested, and Judge Tiger was concerned about those inmates who couldn't afford, I guess, to go to the store or to buy clothes offline, but they knew because they didn't have the money. That is one argument that was made below, Your Honor. However, the argument which is on appeal and before the Court today is whether or not the settlement agreement requires the parties, requires defendants to provide the compression tops and binders at state expense. Didn't Judge Tiger interpret the term access here? Judge Tiger did interpret the term access to mean entitlement, but that's a more broader definition than is reasonable. I don't think he said entitlement. Well, it's our position that providing items freely at state expense is basically conferring an entitlement as opposed to mere access. At some point, price might become a barrier and effectively deny access, but there's no evidence in the record that it's a barrier to all inmates. All right. Ms. Agostino, this issue, in contrast to others, does evaporate if the opportunity to comment does not grant standing. It does not, Your Honor. It does not. It's still not. I think it's a fair reading to say that plaintiff's dispute with this term of the settlement agreement is derived from the plain language of the agreement. All right. If the Court has no further questions, thank you. We'll hear from you. Good morning. May it please the Court. I am Sean Muircamper from Transgender Law Center for Plaintiff Appellee. We're here because my client, Shiloh Quine, made an agreement with the State. In exchange for giving up her claims, the State agreed to stop discriminating against incarcerated transgender women with regard to their access to certain property items. The District Court found that the State failed to honor that agreement and that it violated the Equal Protection Clause in doing so. Why, if negotiations were going on, why didn't her counsel insist during the further negotiations that there be a provision in there of what would happen when she objected and they rejected her suggestions? And why wasn't there a procedure provided expressly? There is a procedure, Your Honor. It's in the Dispute Resolution Clause, which refers to any disputes under the agreement and says that they will be first brought to the magistrate and then to the District Court for formal relief. And so given the broadness of that language, her opportunity to be able to challenge certain parts of the policy we thought was clear during drafting. Then why doesn't the provision, instead of saying opportunity to comment, opportunity to object? Your Honor, the opportunity to comment can't be interpreted to simply mean give us your opinion and then go away. The Dispute Resolution Clause is quite broad. And the District Court, on top of the Dispute Resolution Clause, found that the State had a responsibility, an obligation under the contract to revise its policies and that the State had failed to do so adequately. And so the opportunity to comment, we feel, represents what we envisioned the process would be. You mentioned specific language of that sentence earlier, Your Honor. Before those policies are final, plaintiffs shall have an opportunity to comment on its specific language. All that means is that Ms. Quine would be involved in the drafting process. It does not ---- Was she involved in the drafting process? In other words, was that specific language complied with? She was involved in the drafting process, Your Honor. And did she comment? She did comment, Your Honor. And did they change the policies? Was it meaningful? In other words, she made a number of comments. Did they make any changes? They made some revisions, but refused to make other revisions, and ultimately the State refused to continue meeting and refused to accept the magistrate judge's jurisdiction. And so, but the opportunity to comment, the State's interpretation would render the dispute resolution clause meaningless. So any disputes under the agreement were to be brought to the magistrate judge and then to the district court for final resolution. Because you do have other disputes, right? In addition to the question about the property items, you have other ---- there are, Your Honor. That arose, that you brought to the magistrate judge and then the district court, correct? That's correct, Your Honor. And then he found, the district court found in your favor on most all but one of them, I think. That's correct, Your Honor. Is that right? Okay. So it isn't meaningless. Obviously, there are other disputes alleging a breach of contract. So I don't think you could say it was meaningless, the dispute resolution clause. The dispute resolution clause, in referring to any disputes, is quite broad again, Your Honor. And any ---- if there were any question about whether Ms. Quine had a right to dispute the exclusion of particular property items, that question is resolved by the State's counsel's remarks on record in open court when he was asked this specific question, would there be a process? And he replied, yes, there would be a process. When there were disputes over specific excluded items, there would be a part of the continuing, the court's continuing jurisdiction. They would be reviewed by counsel and then brought to the court. So they're arguing that that, those terms, I guess, were not then included in the actual settlement agreement, and so were superseded by the agreement itself. I'm sorry. So any agreement that was suggested in the ---- before the magistrate judge was then superseded by the written agreement, which I guess has an integration clause. That's their argument. That is their argument, Your Honor. So the California's rule ---- California's rule on parole evidence is a bit different from some other States, and the district court looked at that extrinsic evidence to determine first if the language of the agreement was reasonably susceptible to the meaning being advocated for. The statements made in court refer specifically to the court's continuing jurisdiction. That language is used in the dispute resolution clause. And so applying the California rule, that evidence was admitted for the purpose of interpreting the contract. The State wants to claim that this is a separate agreement, but it's not. We have the dispute resolution clause, and that has to mean something. And not only does it have to mean something, it's ---- Well, it means something. I think we agree that it means something, right? We do, Your Honor. Regardless of whether it affects the exact issue you wanted to argue here. That's right. And it does because this was the exact question that was posed to defense counsel. And defense counsel responded in the affirmative that disputes over particularly excluded items could be brought to the court for resolution. Can I ask you about the HUB institution? So I heard the State saying that when an inmate is identified pursuant to the regulations, they are then transferred to a HUB institution and absent one of these special circumstances, and then would have access to the property items per the TAPs, or however it's pronounced. Do you disagree with that? Is that not how it's working? Or what is the problem with the ---- how is that nevertheless a breach of the agreement if what the State said is correct? So it's important to understand that the State's transgender HUB policy predates this lawsuit, predates this agreement. It's not ---- it is sort of a separate issue. And the State's framing would lead one to believe that the district court ---- that the district court's order said that the HUB policy was somehow impermissible. But that's not true. So the HUB policy allows or requires transfer after someone has been diagnosed with gender dysphoria. That is not the same group of people who are covered by this agreement and by the property policy. So the agreement uses the very broad language, transgender or experiencing symptoms of gender dysphoria. CDCR's own definitions in their gender dysphoria management policy make clear that those are two different concepts. And the phrase symptoms of gender dysphoria must mean something that is short of a full diagnosis. And so, first, not all people who qualify under the property policy will qualify to be sent to a transgender HUB prison. And second, the State ---- Kagan. So somebody who's diagnosed ---- I'm sorry for interrupting. But somebody who's diagnosed with symptoms of gender dysphoria, your argument is that under the settlement agreement, they should have access to property, but they're not transferred to HUBs. Is that what you're saying? Well, that's essentially what we're saying, except I would strike the word diagnosis, Your Honor, because there may be several symptoms that lead up to a diagnosis. And what we're saying is that a diagnosis is not required for access to the property policy. So ---- Is that what the district court said? The district court ---- the district court found that CDCR did have two separate policies, that the HUB policy required a diagnosis, that the agreement and that the language of CDCR's property policy did not require a diagnosis. And so by attempting to apply the property policy only at the HUB institution, CDCR is essentially working a diagnosis requirement in through the back door. So just ---- it says ---- so G says inmates identified by medical or CDCR personnel as transgender or having symptoms of gender dysphoria, that's the group of people who have access to property items. And are you explaining that inmates who are identified as having symptoms of gender dysphoria are not transferred to the HUB institutions? Is that what you're explaining? Yes, Your Honor. So people with a formal gender dysphoria diagnosis are people who will be transferred ---- who are transferred to the transgender HUB institutions. People who may have some symptoms but not qualify for a full diagnosis do not qualify under the HUB policy but do qualify under the property policy. So inmates identified by medical or CDCR personnel as having symptoms of gender dysphoria may not be transferred to the HUB and may not have access to property items. Is that how you're interpreting this? That's how their policies currently are aligned, Your Honor. Okay. Thank you. Yes. If I may, I would like to ---- What if somebody has a diagnosis, but they have a disability that cannot be accommodated in the HUB, are you saying they have to be transferred to the HUB then? No, Your Honor. What we're saying is that the property, the transgender property policy must be present. You don't care whether they're transferred to the HUB or not. All you care about is whether they have access to the property. That's correct, Your Honor. And Judge Tiger ---- And sometimes, not only access, but they're actually provided the property. I'm sorry? In some cases, that they're actually provided the property as they don't have to buy it themselves. I'm so sorry, Your Honor. I missed the last part of your ---- Never mind. Let's ---- And Judge Tiger said that they had to make the property available. That's correct, Your Honor. There's nothing in the agreement that allows them to limit it on the basis of the institution. Exactly. Yeah. That's correct, Your Honor. So let me ask you, there was a lot of briefing and a lot of argument about equal protection. How do we get there? How do you get there? This is a breach of contract. This is a contract, Your Honor. The equal protection constitutional claims were in the original pleading, the 1983 action. You've now got a breach of contract claim under California law. So how do you get an equal protection argument out of this? Because this is a contract with a state government that, in part, required them to stop discriminating against incarcerated transgender people. And so we don't see this as Ms. Quine having revived her equal protection claim, but rather, under this agreement, once this policy, which facially discriminates on the basis of sex and gender identity, was in front of a United States district court judge, the only standard that he had to evaluate it, the only standard that the Supreme Court has allowed to evaluate such policies that discriminate in such ways, is the intermediate scrutiny standard. And so applying intermediate scrutiny, the district court found that the state's justifications for these various exclusions did not rise to meet that standard. The state also wants us to consider constitutional issues, though, because the state says that Turner should be the standard for reviewing their property policy. But Turner has never been applied to sex discrimination, and there has never been an exception to intermediate scrutiny for sex discrimination. And this was the Supreme Court's same reasoning in the Johnson case when it said that strict scrutiny was not trumped by the Turner standard, that there had never been an exception to strict scrutiny. Does the contract's – does this agreement say anything at all about providing the kind of standard that would be applied in the district court's evaluation? It doesn't, Your Honor. Of any dispute? I'm sorry? It doesn't say anything about applying any kind of standard. It doesn't, Your Honor. The district court will apply a particular standard when evaluating any dispute that's brought to the court's attention. Right. And left with that vacuum and seeing a policy that — Other than interpreting the agreement, correct? Interpreting the agreement and requiring in the background that the state's actions are constitutional. There is no exception to the Bill of Rights or to other constitutional requirements for when states enter into contracts. And so the district court here had this facially discriminatory policy in front of it, and determined that the only standard that was available for its review was the intermediate scrutiny standard. I have a — I want to go back to the contract issues. You're putting all your eggs in the basket on the clause dispute resolution. And not in the clause about opportunity to comment. Is that correct? Your Honor, I would say we have many eggs in many baskets. The district court also found that the state had an obligation to revise its policies and that it had failed to do so adequately, and that Ms. Klein could enforce that provision of the contract. You mean on the opportunity to comment provision? On the state's obligation to revise its policies, which is separate from the opportunity to comment, Your Honor. The opportunity to comment on its face is applicable only before the policies are finalized in a regulation, correct? That's correct, Your Honor. And once they're finalized in a regulation, the opportunity to comment has been a requirement adhered to. And then all that's left is the dispute resolution clause, right? And the state's obligation to revise its policies, which the district court found it had failed to do adequately. But it has to revise them only in the dispute resolution clause. It doesn't have to revise them under the opportunity to comment clause. The state had an obligation to revise its policies to stop discriminating against transgender people with regard to their property access. The state also had an obligation to allow Ms. Klein to comment on specific language before those policies were finalized. And they did that. And they did that. That's correct, Your Honor. And so there's no issue on that? There is no issue with respect to this opportunity to comment. But with respect to Ms. Klein's ability to enforce the agreement to require TCCR to live up to its bargain, which included revising its policies to stop discriminating against incarcerated transgender people, Ms. Klein had that ability, regardless of the opportunity to comment. I think my time has expired a couple of times. I think my time has expired a couple of times. But you have a dispute over which the way in which the defendants designed the policy or wrote the policy. And they listened to her comments, but then they came up with their own version. She has a dispute over that. She said it should be written this way or revised in this way. And they said, no, this is it. We listened to you. Here's our final. And she's upset. And so as I understand what happened, there was then a dispute, and she came to court. That's correct, Your Honor. So the dispute isn't over sort of the process and CDCR's process for drafting them, which is what the opportunity to comment refers to. The dispute is over these particularly excluded items. So can the dispute, does the dispute resolution provision include anything? In other words, any new argument that your client has? I guess the State says, well, the dispute resolution is disputes over the interpretation and implementation of the contract. And so you have to point to some breach of contract. It isn't a dispute over everything that your client might be dissatisfied with. In other words, your client couldn't re-bring again a new equal protection claim. So help me understand how you're interpreting the scope of that. Is it limited to implementation of the contract and interpretation of the contract, or is it anything? Your Honor, it's any disputes under the agreement. So what does under the agreement mean? A violation of the agreement or just something that's related to the agreement? Or what's your interpretation? It includes CDCR's obligation to make new policies, and it includes those policies themselves. So it relates to any steps that CDCR has done in the agreement to implement the agreement, and then anything that CDCR may do in the future to implement the agreement is a dispute under the agreement? In perpetuity? Not in perpetuity, Your Honor. Why not? If you look at Clause I, upon execution of all this agreement's terms, plaintiff agrees to dismiss the complaint with prejudice. And so CDCR was required to create new policies under this agreement. And again, CDCR agreed that this dispute resolution clause included the exclusion of particular property items. And so given that their counsel made that promise in court, on the record, the district court appropriately admitted that extrinsic evidence to understand the party's intent in contracting. And when a district court looks at extrinsic evidence in that way, its decisions are reviewed under the clear error standard and are due considerable defense. Well, under the contract then, when everything is completed, when Quinn has everything that she's entitled to, you said there will be a dismissal of the complaint with prejudice, right? That's Section I, Your Honor, yes. And that will happen. Let me ask you this. If this panel were to fully affirm what the magistrate judge did as a district court, then this is over. The complaint would be dismissed with prejudice and no one else could come along in the future to try to enforce the agreement. Is that a fair statement? I think that's a fair statement, Your Honor. It's over. If the district court's order were affirmed and CDCR changed its policies to honor its obligation to revise those policies adequately as the district court found, then yes, Your Honor, the case would be dismissed. Anyone else who had trouble with those policies would be left to bring their own. So your client would not have this continuing role as a representative of all identified prisoners. It would end. She's finished. That's correct, Your Honor. Once this question is resolved and once the California Department of Corrections and Rehabilitation amends their policies adequately, then Ms. Quine, as long as they've complied with the rest of the agreement, then, yes, there will be a dismissal with prejudice. Okay. All right. Thank you very much. Thank you. We appreciate your arguments this morning. By plaintiff's reading, all disputes in perpetuity may be brought to the district court. That's what we've just been discussing. And defendants don't dispute that some future plaintiff may be able to bring a claim concerning the terms of the property policy, but Ms. Quine released and dismissed all of her claims concerning her equal protection claims concerning the terms of the property policy. So they're saying that the complaint eventually will be dismissed. I guess I take it the complaint is not dismissed at this point. No, it's not, Your Honor. And I have to say that's the first time I've heard plaintiff's counsel make that statement. It has not been clear to me, it has not been clear to defendants under what circumstances Ms. Quine, plaintiff, would deem the property policy sufficient under the settlement agreement given the broad interpretation of the district court. Well, the state could always go to the district court and say, I move to dismiss it, and represent to the district court that you fully complied. That's a fair point. The district court could say, yes, I agree. Case is over. Out of here. That's a fair point, Your Honor. That's a fair point. Turning to the hub question, if plaintiff is correct that the hubs did exist prior to the execution of the settlement agreement, and all the more reason why, if the plaintiff had intended that the CDCR not apply its property policy only to the hubs, then it should have appeared in the settlement agreement, and it did not. Plaintiff was fully aware that we had a hub system. What's the problem with just, you know, allowing the same property regulations to apply to people who have been identified, but who are not in a hub? Why is that a big deal? The property is considered therapeutic for gender dysphoria, and property is tightly controlled in the prison environment. I understand that. So the policy allows only the property which is believed will be safe in a limited and controlled way in the prison environment. But here's the problem I have with that, just in terms of confusion and ambiguity that I see there, and that is that if there's a problem with this clothing in a prison because they don't have a hub that's acceptable to accept, say, a handicapped individual, or they don't have adequate facilities to be able to separate, put somebody in a prison where there's not an opposing gang member, that's a corrections problem. It's not the inmate's problem. That's correct, Your Honor, and that's a reasonable point to be made. But the question before the Court today is whether or not the settlement agreement allows her to dictate this dispute and to impose a requirement that the policy apply beyond the hubs. It's not quite that. It's whether the district court erred in its interpretation of the agreement. That's correct. It's not dictating anything. Well, let me ask you this. I just want to understand as a definition. They're saying that the opposing counsel is saying that inmates identified as having symptoms of gender dysphoria, this is from the settlement agreement, are not transferred to the hub institutions and therefore don't have access to property. Is that correct? That's what the opposing counsel said. That evidence isn't in the record, Your Honor. It wasn't presented to the district court. It may be correct. However, the policy does provide that inmates will be evaluated on a case-by-case basis. It's also important to recognize the policy provides for identification. Once these people become known to CDCR, CDCR endeavors and makes every effort to transfer them to a hub. Well, is it the case that there are inmates who have been identified as having symptoms of gender dysphoria who would not be given access to property items? I mean, that's the plain language of the settlement agreement, that they are to be given access to property items. Again, I'm not aware of those cases, and it's not in the record. Okay. Thank you. I want to make sure you – I gave the other side plenty of time, so I want to make sure you made your points. Okay. So with respect to the opportunity to provide comment, plaintiff stated that in California the parole evidence rule is broader. However, plaintiff is over-reading the parole evidence rule in California. It's relying exclusively on the PG&E case. And subsequent California precedent has limited the effect of the PG&E case and has made – such as Casa Herrera and Dory – and made clear that extrinsic evidence cannot be admitted to contradict a written agreement. And clearly, this process that the district court entered into by which the property policy was subjected to constitutional scrutiny is in contradiction with the release of the settlement agreement. Under this, plaintiff said in her argument that the constitutional issues were properly before the court because it was a settlement agreement concerning the State. By that interpretation, the State has no incentive to enter into settlement agreements in 1983 lawsuits because the constitutional issues will remain before the court in perpetuity. This Court should give effect to the finality of the settlement agreement, and particularly with reference to the integration clause and the modifications waiver, and reverse the district court's order. Okay. Thank you. Thank you, counsel. We appreciate your arguments on both sides, and the matter is submitted.
judges: Murphy, Paez, Ikuta